**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

STATE OF OKLAHOMA,

     *Plaintiff*,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

     *Defendants*.

Case No. CIV-24-461-JD

**<u>DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

Introduction ................................................................................................................. 1

Background .................................................................................................................. 3

   I.   Title IX, Implementing Regulations, and Guidance ................................................ 3

   II.  Procedural History ................................................................................................. 5

Legal Standard ............................................................................................................ 5

Argument .................................................................................................................... 6

   I.   Plaintiff Is Unlikely to Succeed on the Merits. ..................................................... 6

     A.   The Rule's Specification That Title IX Prohibits Discrimination on the Basis of Gender Identity Is Compelled by the Statutory Text. ............................................ 6

     B.   Section 106.31(a)(2)'s Limitations on Sex Separation and Differentiation Properly Account for Congressional Direction. ...................................................... 11

     C.   The Final Rule's Hostile Environment Sex-Based Harassment Definition Is a Lawful Exercise of the Department's Statutory Authority. ..................................... 14

       1.   *Davis* Does Not Control the Scope of the Department's Enforcement Actions 15

       2.   The Definition Does Not Violate the First Amendment. ............................. 17

     D.   Plaintiff's Arbitrary and Capricious Claim Is Unlikely to Succeed. ................ 19

     E.   Plaintiff's Constitutional Claims Are Unlikely to Succeed ............................. 22

       1.   The Final Rule Does Not Violate the Spending Clause .............................. 22

       2.   The Final Rule Does Not Violate the Tenth Amendment ............................ 24

       3.   The Final Rule Does Not Implicate the Major Questions Doctrine ............. 24

   II.  Plaintiff Has Not Established Irreparable Harm .................................................. 25

   III.  The Equities and Public Interest Weigh Against Preliminary Relief. ................. 28

   IV.  Any Relief Afforded by the Court Should Be Limited in Accordance with the Administrative Procedure Act and Equitable Principles. .............................................. 29

Conclusion ................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville,*
75 F.4th 760 (7th Cir. 2023) ........................................................................................ 8

*A.O. Smith Corp. v. FTC,*
530 F.2d 515 (3d Cir.1976) ....................................................................................... 26

*Am. Hosp. Ass'n v. Harris,*
625 F.2d 1328 (7th Cir.1980) .................................................................................... 26

*Ams. for Prosperity Found. v. Bonta,*
594 U.S. 595 (2021) ................................................................................................. 18

*Arizona v. Biden,*
40 F.4th 375 (6th Cir. 2022) ..................................................................................... 30

*Ayotte v. Planned Parenthood of N. New England,*
546 U.S. 320 (2006) ................................................................................................. 30

*Benning v. Georgia,*
391 F.3d 1299 (11th Cir. 2004) ................................................................................ 23

*Big Tyme Invs., L.L.C. v. Edwards,*
985 F.3d 456 (5th Cir. 2021) .................................................................................... 29

*Bostock v. Clayton County,*
590 U.S. 644 (2020) ..........................................................................................*passim*

*Bridge v. Oklahoma State Department of Education,*
No.CIV-22-00787-JD, 2024 WL 150598 (W.D. Okla. Jan. 12, 2024) ........................ 9, 13

*Califano v. Aznavorian,*
439 U.S. 170 (1978) ............................................................................................ 13, 20

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ................................................................................................. 30

*Cannon v. Univ. of Chi.,*
441 U.S. 677 (1979) ................................................................................................. 29

*Cornish v. Dudas,*
540 F. Supp. 2d 61 (D.D.C. 2008)............................................................................. 28

*Davis v. Monroe County Board of Education,*
526 U.S. 629 (1999) ................................................................................*passim*

*FERC v. Elec. Power Supply Ass'n,*
577 U.S. 260 (2016) ................................................................................20

*Florida v. HHS,*
19 F.4th 1271 (11th Cir. 2021) ..............................................................26

*Fowler v. Stitt,*
104 F.4th 770 (10th Cir. 2024) ..........................................................8, 10

*Franklin v. Gwinnett Cnty. Pub.,*
*Schs.*, 503 U.S. 60 (1992) .......................................................................8

*Freedom Holdings, Inc. v. Spitzer,*
408 F.3d 112 (2d Cir. 2005) ...................................................................26

*Gebser v. Lago Vista Indep. Sch. Dist.,*
524 U.S. 274 (1998) ..........................................................................15, 16

*Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.,*
245 F.3d 1172 (10th Cir. 2001) ..............................................................8

*Grabowski v. Ariz. Bd. of Regents,*
69 F.4th 1110 (9th Cir. 2023) ..................................................................8

*Grimm v. Gloucester Cnty. Sch. Bd.,*
972 F.3d 586 (4th Cir. 2020) .............................................................8, 12

*Gross v. FBL Fin. Servs., Inc.,*
557 U.S. 167 (2009) ..................................................................................7

*Hamby v. Jordan,*
55 F. App'x 885 (10th Cir. 2003) ............................................................6

*Harris v. Forklift Sys., Inc.,*
510 U.S. 17 (1993) ............................................................................15, 18

*Heideman v. S. Salt Lake City,*
348 F.3d 1182 (10th Cir. 2003) ..............................................................25

*Hodel v. Va. Surface Mining & Reclamation Ass'n,*
452 U.S. 264 (1981) ................................................................................26

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) ........................................................................................ 3, 24

*June v. Union Carbide Corp.*,
577 F.3d 1234 (10th Cir. 2009) ........................................................................ 17

*Kan. Health Care Ass'n v. Kan. Dep't of Social & Rehabilitation Servs.*,
31 F.3d 1536 (10th Cir. 1994) .......................................................................... 28

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
814 F. App'x 125 (6th Cir. 2020) ..................................................................... 29

*Maryland v. King*,
567 U.S. 1301 (2012) ....................................................................................... 26

*McCloy v. USDA*,
351 F.3d 447 (10th Cir. 2003) .......................................................................... 17

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ............................................................................................. 8

*Moody v. NetChoice, LLC*,
144 S. Ct. 2383 (2024) ..................................................................................... 18

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) ...................................................................................... 19, 22

*Muldrow v. City of St. Louis*,
144 S. Ct. 967 (2024) ....................................................................................... 12

*Munaf v. Geren*,
553 U.S. 674 (2008) ........................................................................................... 5

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
434 U.S. 1345 (1977) ....................................................................................... 26

*New York v. United States*,
505 U.S. 144 (1992) ......................................................................................... 24

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................................... 6, 28

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) ........................................................................................... 22

*Prairie Band of Potawatomi Indians v. Pierce*,
253 F.3d 1234 (10th Cir. 2001) ................................................................ 25

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) ................................................................................. 29

*RoDa Drilling Co. v. Siegal*,
552 F.3d 1203 (10th Cir. 2009) .......................................................... 27, 28

*Rowles v. Curators of Univ. of Mo.*,
983 F.3d 345 (8th Cir. 2020) .................................................................... 18

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ..................................................................................... 7

*Schrier v. Univ. of Colo.*,
427 F.3d 1253 (10th Cir. 2005) .......................................................... 25, 26

*South Dakota v. Dole*,
483 U.S. 203 (1987) ................................................................................. 23

*Speech First v. Cartwright*,
32 F.4th 1110 (11th Cir. 2022) ................................................................ 19

*Vill. of Logan v. U.S. Dep't of Interior*,
577 F. App'x 760 (10th Cir. 2014) ............................................................. 5

*West Virginia v. EPA*,
597 U.S. 697 (2022) ................................................................................. 25

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) ................................................................. 12

*Winter v. NRDC*,
555 U.S. 7 (2008) ................................................................................ 5, 25

**Statutes**

20 U.S.C. § 1681(a) ..........................................................................*passim*

20 U.S.C. § 1681(a)(1) ............................................................................... 3

20 U.S.C. § 1681(a)(6) ....................................................................... 12, 14

20 U.S.C. § 1682 ................................................................................. 27, 28

20 U.S.C. § 1686 ................................................................................ 13

42 U.S.C. § 2000e-2(a)(1) ............................................................... 4, 7

**Regulations**

34 C.F.R. § 106.10 .............................................................................. 6

34 C.F.R. § 106.2 ................................................................... 2, 14, 30

34 C.F.R. § 106.31(a)(2) ...........................................................*passim*

34 C.F.R. § 106.31(b)(4) ................................................................... 11

34 C.F.R. § 106.33 ............................................................................ 12

34 C.F.R. § 106.41(a) .................................................................... 5, 22

34 C.F.R. § 106.41(b) .................................................................... 5, 13

34 C.F.R. § 106.6(d) ......................................................................... 18

62 Fed. Reg. 12,034 (Mar. 13, 1997) ............................................... 16

85 Fed. Reg. 30,026 (May 19, 2020) ................................................. 4

86 Fed. Reg. 13,803 (Mar. 8,2021) .................................................... 4

87 Fed. Reg. 41,390 (proposed July 12, 2022) ................................... 4

88 Fed. Reg. 22,860 (proposed Apr. 13, 2023) ............................. 5, 22

89 Fed. Reg. 33,474 (Apr. 29,2024) .............................................. 1, 21

**INTRODUCTION**

Title IX, which prohibits recipients of federal funds from discriminating on the basis of sex in their education programs or activities, 20 U.S.C. § 1681(a), charges the Department of Education to issue rules effectuating the statute, *id.* § 1682. Pursuant to that provision, on April 29, 2024, the Department issued Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) [hereinafter Final Rule]. Plaintiff State of Oklahoma now seeks to preliminarily enjoin the Final Rule, focusing on three provisions: §§ 106.10, 106.31(a)(2), and 106.2. Its challenge fails for the following reasons.

First, in § 106.10, the Rule correctly specifies that discrimination on the basis of gender identity is necessarily a form of sex discrimination. 89 Fed. Reg. at 33,886. The Department's interpretation of discrimination "on the basis of sex" in Title IX straightforwardly applies the reasoning in *Bostock v. Clayton County*, 590 U.S. 644 (2020). *Bostock* concluded that discrimination based on transgender status is necessarily discrimination "because of" sex under Title VII "because it is impossible" to discriminate against a person for being transgender "without discriminating against that individual based on sex." *Id.* at 660. That same reasoning, which as in *Bostock* itself does not require understanding "sex" to mean anything other than sex assigned at birth, applies to the nearly identical text prohibiting sex discrimination in Title IX.

Second, in § 106.31(a)(2), the Rule addresses how recipients may engage in some forms of sex separation or differentiation without unlawfully discriminating on the basis of sex. Consistent with Supreme Court precedent, the Rule explains that outside of the

identified statutory exceptions or exclusions, different treatment based on sex constitutes unlawful discrimination under Title IX if it causes more than de minimis harm. *See* 89 Fed. Reg. at 33,887 (addressing this provision to be codified at 34 C.F.R. § 106.31(a)(2)). This includes when a recipient denies an individual access to facilities consistent with that individual's gender identity, such as in the case of restrooms.

Third, the Rule appropriately defines sex-based hostile environment harassment. *See id.* at 33,884 (to be codified at 34 C.F.R. § 106.2). The Department used a similar standard in its enforcement of Title IX for decades prior to regulatory changes made in 2020 and continues to use a similar standard in its enforcement of Title VI of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act. And courts and the Equal Employment Opportunity Commission (EEOC) have used a similar standard to identify harassment under Title VII's analogous provisions for decades. Plaintiff fails to show that the Rule conflicts with any governing legal precedent or with the First Amendment, or that it is otherwise arbitrary or capricious.

Plaintiff also is unlikely to succeed on its other constitutional and statutory challenges. The Rule does not violate the Spending Clause, Tenth Amendment, or the major questions doctrine because it effectuates Congress's unambiguous prohibition of sex discrimination in Title IX.

In addition to Plaintiff's failure to demonstrate a likelihood of success on the merits, Plaintiff also has not met its high burden to satisfy the other requirements for a preliminary injunction. Plaintiff's alleged harms are largely speculative and cannot establish irreparable injury. Moreover, the public interest and balance of equities weigh against granting

Plaintiff's motion because enjoining the Rule would substantially harm the federal government's interest in preventing sex discrimination in federally funded education programs and activities. Accordingly, the Court should deny Plaintiff's motion.

## BACKGROUND

### I.     Title IX, Implementing Regulations, and Guidance

Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). There are only a small number of "specific, narrow exceptions to that broad prohibition." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005); *see* 20 U.S.C. § 1681(a)(1)–(9) (listing educational institutions, organizations, or programs that are exempt or partly exempt from the nondiscrimination mandate); *id.* § 1686 (permitting maintenance of sex-separate living facilities).

Title IX directs the Department to "issu[e] rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection with which the action is taken." *Id.* § 1682. Title IX also sets forth an administrative enforcement scheme, which requires the Department to seek voluntary compliance from (or, failing that, to terminate or refuse to grant or continue the federal funds of) a recipient that fails to comply with the statute or the Department's implementing regulations, through a variety of means. *Id.*

Over the years, the Department has promulgated regulations effectuating Title IX, including in 2020, when it specified how recipients of federal funds must respond to

allegations of sexual harassment. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30,026 (May 19, 2020) [hereinafter 2020 Amendments].

One month after publication of the 2020 Amendments, the Supreme Court held that discrimination on the basis of gender identity is necessarily a form of prohibited discrimination "because of . . . sex" in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). *See Bostock*, 590 U.S. at 660. Following *Bostock*, the President directed the Department of Education to review the 2020 Amendments and existing agency guidance "for consistency with governing law." Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, Exec. Order No. 14,021, § 2, 86 Fed. Reg. 13,803 (Mar. 8, 2021).

After a public engagement process, in July 2022 the Department issued a Notice of Proposed Rulemaking (NPRM). *See* 87 Fed. Reg. 41,390 (proposed July 12, 2022). Following review of more than 240,000 public comments, the Department published the Final Rule, which has an effective date of August 1, 2024. *See* 89 Fed. Reg. at 33,476.

Although the Final Rule includes many provisions, as relevant to this case, the Final Rule (1) clarifies the scope of prohibited sex discrimination under Title IX; (2) clarifies the limits of permissible different or separate treatment on the basis of sex under Title IX; and (3) defines hostile environment sex-based harassment under Title IX.

The Rule explicitly does not amend or affect the Department's regulation regarding participation on sex-separate athletic teams, contrary to Plaintiff's assertions, Pl.'s Mot. for Prelim. Inj. & Opening Br. in Supp. 6, 28, ECF No. 21 [hereinafter Pl.'s Br.]. The eligibility

criteria that a school can use for its sex-separate athletic teams remain unchanged. 89 Fed. Reg. at 33,817. The current athletics regulations sets forth an exception to the general nondiscrimination mandate for athletics in § 106.41(a), and allows "separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." 34 C.F.R. § 106.41(b). The Rule does not change § 106.41(a) or § 106.41(b). *See* 89 Fed. Reg. at 33,893. The Department is considering amendments to the regulations governing sex-separate athletic teams in a separate, ongoing rulemaking. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance: Sex-Related Eligibility Criteria for Male and Female Athletic Teams, 88 Fed. Reg. 22,860 (proposed Apr. 13, 2023).

## II.   Procedural History

Plaintiff filed the Complaint on May 6, 2024, ECF No. 1, and moved for a preliminary injunction nearly eight weeks later, on June 28, 2024. ECF No. 21.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted); *see also Vill. of Logan v. U.S. Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014). A plaintiff may obtain this "extraordinary remedy" only "upon a clear showing" that it is "entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). The party seeking a preliminary injunction bears the burden to show (1) "a substantial likelihood of success on the merits," (2) "irreparable injury to the movant if the preliminary injunction is denied," (3) "the threatened injury to the movant outweighs the injury to the other party under the

preliminary injunction," and (4) "the injunction [would] not [be] adverse to the public interest." *Hamby v. Jordan*, 55 F. App'x 885 (10th Cir. 2003) (citation omitted). When the federal government is the defendant, the last two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

## I.  Plaintiff Is Unlikely to Succeed on the Merits.

### A.  The Rule's Specification That Title IX Prohibits Discrimination on the Basis of Gender Identity Is Compelled by the Statutory Text.

Title IX states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Section 106.10 of the Final Rule recognizes that "[d]iscrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. at 33,886. As the Department explained, "discrimination on each of those bases is sex discrimination because each necessarily involves consideration of a person's sex, even if that term is understood to mean only physiological or 'biological distinctions between male and female.'" *Id.* at 33,802 (quoting *Bostock*, 590 U.S. at 655).

Plaintiff argues that the Department's interpretation of Title IX is contrary to the statutory text and is arbitrary and capricious. Pl.'s Br. 15–20, 23–24. In fact, § 106.10 faithfully interprets the unambiguous statutory text in light of *Bostock*, which construed Title VII's provision making it unlawful, in relevant part, "for an employer . . . to

discriminate against any individual . . . because of such individual's . . . sex," 590 U.S. at 655 (quoting 42 U.S.C. § 2000e-2(a)(1)). The Supreme Court explained that Title VII's "because of" language "incorporates the 'simple' and 'traditional' standard of but-for causation." *Id.* at 656–57 (citation omitted). "[S]ex is necessarily a but-for cause" of discrimination on the basis of gender identity "because it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 660, 661 (emphasis omitted). If, for example, an employer "fires a transgender person who was identified as a male at birth but who now identifies as a female" but "retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth." *Id.* at 660. "[T]he individual employee's sex plays an unmistakable and impermissible role in the discharge decision." *Id.* That is so even if "sex" in Title VII "refer[s] only to biological distinctions between male and female." *Id.* at 655.

*Bostock*'s analysis of Title VII's "because of" language, 42 U.S.C. § 2000e-2(a)(1), applies with equal force to Title IX's prohibition on discrimination "on the basis of sex," 20 U.S.C. § 1681(a). The Supreme Court has long used the phrase "on the basis of" interchangeably with Title VII's "because of" language when discussing Title VII's causation standard, including in *Bostock* itself. *See* 590 U.S. at 650 ("[I]n Title VII, Congress outlawed discrimination in the workplace on the basis of . . . sex."); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (explaining statutory phrase, "based on" has the same meaning as the phrase "because of" (citing *Safeco Ins. Co. of Am.*

*v. Burr*, 551 U.S. 47, 63–64 & n.14 (2007))). Courts, including the Tenth Circuit, consistently rely on interpretations of Title VII's prohibition against discrimination "because of . . . sex" to interpret Title IX's textually similar provision. *See, e.g.*, *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)); *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001) ("Courts have generally assessed Title IX discrimination claims under the same legal analysis as Title VII claims."); *see also Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024) ((holding that Bostock's reasoning was not limited to the Title VII context and applied to other sex discrimination claims because of "the inextricable relationship between transgender status and sex"). And as to the specific question at hand, several courts have already held that there is no difference between the two statutes that would permit a different result. *See, e.g.*, *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 769 (7th Cir. 2023); *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020). Title IX no more permits a school to bar a student from band practice because the student is transgender than Title VII permits an employer to fire an employee because the employee is transgender.

Plaintiff fails to engage with the Department's analysis of *Bostock*, 89 Fed. Reg. at 33,802–08, instead leaning on its view that sex is binary and "biological," Pl.'s Br. 15–20. Crucially, however, Plaintiff fails to acknowledge that *Bostock* expressly proceeded on that assumption. 590 U.S. at 655. The Rule does not require any contrary assumption; regardless of how one defines *sex*, "it is impossible to discriminate against a person for

being . . . transgender without discriminating against that individual based on sex." *Id.* at 660; *see also* 89 Fed. Reg. at 33,802, 33,804–05, 33,807. As *Bostock* underscores, discriminating against someone based on their gender identity necessarily constitutes discrimination "on the basis of" the sex that they were assigned at birth. *See Bostock*, 590 U.S. at 66,061 (explaining "transgender status [is] inextricably bound up with sex").

Plaintiff incorrectly relies on *Bridge v. Oklahoma State Department of Education*, No. CIV-22-00787-JD, 2024 WL 150598 (W.D. Okla. Jan. 12, 2024), to argue that Title IX does not prohibit gender identity discrimination, Pls.' Mem. 15–19. *Bridge* did not interpret the scope of discrimination "on the basis of sex" addressed in § 106.10, but rather held that a state law requiring sex-separate bathrooms based on sex assigned at birth was consistent with the Equal Protection Clause and Title IX. 2024 WL 150598, at *8. The Court reasoned, among other things, that "[a]t the time Title IX was enacted, the ordinary public meaning of 'sex' was understood to mean the biological, anatomical, and reproductive differences between male and female," *id.*, and that "the definition of 'sex' [was] determinative" with respect to whether Title IX permitted "excluding a transgender student from a restroom on the basis of biological sex," *id.* at *6–7. The Court noted that the Supreme Court "made clear that [*Bostock*] did 'not purport to address bathrooms, locker rooms, or anything else of the kind.'" *Id.* at *1 n.1 (quoting *Bostock*, 590 U.S. at 681). But, like *Bostock*, § 106.10 does not address policies for sex-separate restrooms or whether such sex separation falls within an exception to the relevant statute's general nondiscrimination mandate. 89 Fed. Reg. at 33,886; *id.* at 33,802 (explaining, with respect to § 106.10, that "[t]he text of Title IX unambiguously covers any sex discrimination, except to the extent

9

excluded in certain statutory provisions"). Instead, that issue is addressed in § 106.31(a)(2), as discussed below.

Moreover, since *Bridge* was decided, the Tenth Circuit has held that *Bostock*'s reasoning was not limited to the Title VII context, but rather applied to other sex discrimination claims because of "the inextricable relationship between transgender status and sex." *Fowler*, 104 F.4th at 790. As *Bostock* instructs, even assuming that "sex" refers "only to biological distinctions between male and female," discrimination based on transgender status necessarily entails discrimination based on sex. 590 U.S. at 555.

Plaintiff argues that *Fowler* is inapplicable to this case because it concerned an equal protection claim rather than a Title IX claim. *See* Pl.'s Br. 19 n.13. But the central observation of *Fowler*—that transgender status is inextricably bound up with sex—is likewise determinative with respect to the scope of Title IX's prohibition on discrimination "on the basis of sex." Title IX's prohibition on sex discrimination is materially indistinguishable from the statutory text that was at issue in *Bostock*. *See, e.g.*, 590 U.S. at 674 (stating "when the meaning of the statute's terms is plain, our job is at an end"). And *Fowler* rejected the exact type of cabining that Plaintiff asks this Court to engages in. *See* 104 F.4th at 790 (observing that the Supreme "Court's focus on Title VII and the issue before it suggests a proper exercise of judicial restraint, not a silent directive that its reasoning about the link between homosexual or transgender status and sex was restricted to Title VII").

**B.     Section 106.31(a)(2)'s Limitations on Sex Separation and Differentiation Properly Account for Congressional Direction.**

Contrary to Plaintiff's contentions, Pl.'s Br. 19–20, 25, the Final Rule's explanation of the extent to which Title IX permits separate or different treatment on the basis of sex also follows naturally from Title IX's operative text.

In § 106.31(a)(2), the Rule provides that "[i]n the limited circumstances in which" Title IX and its implementing regulations permit separation on the basis of sex, that separation must not be carried out "in a manner that discriminates on the basis of sex by subjecting a person to more than de minimis harm." 89 Fed. Reg. at 33,887. The de minimis harm standard in § 106.31(a)(2) properly applies a central element of Title IX's prohibition of sex-based "discrimination," consistent with Supreme Court precedents interpreting that term—that different or separate treatment based on sex is prohibited (i.e., discriminatory) when it causes harm.

As explained in the Final Rule, the Department's regulations have long specified that separate or different treatment on the basis of sex is generally prohibited under Title IX because such treatment is presumptively discriminatory. 89 Fed. Reg. at 33,814 (citing NPRM, 87 Fed. Reg. at 41,534; 34 C.F.R. § 106.31(b)(4), (7)). The regulations, however, have also long recognized limited contexts in which sex separation or differentiation is allowed. *Id.* Section 106.31(a)(2) explains how recipients may carry out such separate or different treatment without running afoul of Title IX's nondiscrimination mandate. Consistent with Supreme Court precedent, the Rule provides that, save for limited instances allowed by statute, Title IX prohibits "distinctions or differences in treatment [on the basis

of sex] that injure protected individuals." *Id.* at 33,814 (quoting *Bostock*, 590 U.S. at 681); *see Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024) ("The words 'discriminate against,' we have explained, refer to 'differences in treatment that injure' employees." (quoting *Bostock*, 590 U.S. at 681)).

The Department has long recognized that sex "separation in certain circumstances, including in the context of bathrooms or locker rooms, is not presumptively unlawful sex discrimination" because such sex-separate facilities generally impose no more than de minimis harm on students. 89 Fed. Reg. at 33,818; *see generally* 34 C.F.R. § 106.33. But consistent with federal court decisions and guidelines published by respected medical organizations, the Department explained that sex separation that prevents a person from participating in a program or activity consistent with their gender identity *does* cause more than de minimis harm—a conclusion that Plaintiff does not dispute. *See* 89 Fed. Reg. at 33,818 (citing *Grimm*, 972 F.3d at 617–18; *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1045–46 (7th Cir. 2017); *id.* at 33,819 n.90 (citing guidelines published by medical organizations). Because preventing a student from using sex-separate restrooms consistent with their gender identity causes more than de minimis harm on the basis of sex, *id.* at 33,814, and because no statutory exception permits such discrimination, it is prohibited by Title IX.

At the same time, the Department recognized that Congress specified a few limited contexts in which separate or different treatment based on sex is permitted by the statute even if it causes harm. *Id.* at 33,819; *see, e.g.*, 20 U.S.C. § 1681(a)(6) (membership practices of certain social fraternities or sororities); *id.* § 1681(a)(4) (institutions focused

on military training); *id.* § 1686 (educational institution's maintenance of "separate living facilities for the different sexes"). As stated in § 106.31(a)(2), recipients thus may carry out sex-separate activities or provide sex-separate facilities in a manner that subjects a person to more than de minimis harm only "as permitted by 20 U.S.C. [§] 1681(a)(1) through (9) and the corresponding regulations at [34 C.F.R.] §§ 106.12 through 106.15, 20 U.S.C. [§] 1686 and its corresponding regulation [34 C.F.R.] § 106.32(b)(1), or § 106.41(b)." 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)).

In attending to the distinction between (1) regulations that mirror an express statutory exception or exclusion, as listed in § 106.31(a)(2), and (2) regulations permitting sex separation in other contexts not specifically exempted by Congress, 89 Fed. Reg. at 33,814, 33,819, the Rule "clearly effectuates this basic congressional decision." *Califano v. Aznavorian*, 439 U.S. 170, 178 (1978). As Congress did not exclude restrooms, locker rooms, or physical education classes from the general prohibition on sex discrimination, the Department reasonably determined that sex separation in such contexts can be consistent with Title IX only to the extent that any sex-based harm imposed is de minimis (i.e., not discriminatory). 89 Fed. Reg. at 33,816.

This Court's decision in *Bridge*, 2024 WL 150598, at *1, does not militate a different result. *Bridge* concluded that Title IX's allowances for sex separate facilities mean that "sex" must refer to "biological sex," *id.* at *7, and mistakenly assumed that by 20 U.S.C. § 1686 carved out restrooms from Title IX's nondiscrimination mandate. *Id.* at *8. As noted above, just as in *Bostock*, the Final Rule does not require an understanding that "sex" means anything other than sex assigned at birth. *See* Part I.A. The standard set forth

in 106.31(a)(2) thus does not rely on any such understanding. However, the Department

recognized—as *Bridge* overlooked—that restrooms are not one of the statutory exclusions

from Title IX's general prohibition on sex discrimination and that recipients can engage in

such sex separation only in a manner that does not cause more than de minimis harm to

individuals on the basis of sex. Furthermore, the Department has long interpreted restrooms

(which are distinct, uninhabitable spaces) not to be "living facilities" under the statute. *See*

*generally* 89 Fed. Reg. at 33,821 (explaining that the statutory living facilities "carve-out"

in § 1686 is inapplicable to "other aspects of a recipient's education program or activity

for which Title IX permits different treatment or separation on the basis of sex, such as

bathrooms, locker rooms, or shower facilities," and noting that the latter are "regulations

that the Department adopted under different statutory authority [20 U.S.C. §§ 1681–1682],

and which have long been addressed separately from 'living facilities'").

### C.   The Final Rule's Hostile Environment Sex-Based Harassment Definition Is a Lawful Exercise of the Department's Statutory Authority.

Plaintiff is also unlikely to succeed on its claim that the Rule's sex-based hostile

environment harassment definition is unlawful. The Final Rule defines hostile environment

harassment, in relevant part, as "[u]nwelcome sex-based conduct that, based on the totality

of the circumstances, is subjectively and objectively offensive and is so severe or pervasive

that it limits or denies a person's ability to participate in or benefit from the recipient's

education program or activity." *Id.* at 33,884 (to be codified at 34 C.F.R. § 106.2). The

definition is consistent with "relevant judicial precedent, . . . congressional intent[,] and the

Department's longstanding interpretation of Title IX and resulting enforcement practice

prior to the 2020 amendments." *Id.* at 33,490. In addition, this language "closely tracks longstanding case law defining sexual harassment," *id.* at 33,494 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)), and aligns with the definition used by the EEOC under Title VII, *id.* at 33,516. Plaintiff's counterarguments are incorrect for the following reasons.

### 1. *Davis* Does Not Control the Scope of the Department's Enforcement Actions

Plaintiff argues that the Department should have maintained the hostile environment harassment standard from the 2020 Amendments, which closely tracks the standard used for private damages lawsuits in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). Pl.'s Br. 21. But the Department is not required to maintain the *Davis* standard. *Davis* addressed the standard required in a private action for damages, 526 U.S. at 650; it did not limit the Department's enforcement authority. 89 Fed. Reg. at 33,499. The scope of the private cause of action under Title IX is based in part on the fact that it is an implied, rather than express, creation of Congress. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284 (1998). Explaining that "[t]he requirement that recipients receive adequate notice of Title IX's proscriptions . . . bears on the proper definition of 'discrimination' in the context of a private damages action," *Davis* thus held that "funding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." 526 U.S. at 650.

Plaintiff does not explain why the *Davis* standard should apply in the distinct context

of administrative enforcement. In the administrative enforcement context, the Department determines whether the recipient discriminated in violation of Title IX, after which the Department must notify the recipient of the violation before taking any enforcement action. This renders inapposite *Davis*'s analysis of when to allow recovery of damages on theories of *respondeat superior* and constructive notice. Indeed, after observing that Congress "entrusted" federal agencies to "promulgate rules, regulations, and orders to enforce the objectives" of Title IX, *id.* at 638, *Davis* repeatedly and approvingly cited the Department's then-recently published guidance regarding sexual harassment, *see id.* at 647–48, 651 (citing 1997 Sexual Harassment Guidance, 62 Fed. Reg. 12,034 (Mar. 13, 1997)), which stated that schools could be found to violate Title IX if the relevant harassment "was sufficiently severe, persistent, or pervasive to create a hostile environment," 1997 Sexual Harassment Guidance, 62 Fed. Reg. at 12,040.

*Davis* did not suggest that the Department's enforcement standard should mirror the standard for private suits. On the contrary, both *Gebser* and *Davis* contemplated that the standard for private suits would be *different* than the standard for the Department's enforcement efforts. *See Davis*, 526 U.S. at 639 ("[W]e are asked to do more than define the scope of the behavior that Title IX proscribes. We must determine whether [the facts] can support a private suit for money damages."); *Gebser*, 524 U.S. at 284 ("Because the private right of action under Title IX is judicially implied, we have a measure of latitude to shape a sensible remedial scheme . . . "); *see also* 2020 Amendments, 85 Fed. Reg. at 30,033 ("Neither *Gebser* nor *Davis* opined as to what the appropriate conditions (e.g., definition of sexual harassment, actual knowledge) and liability standard (e.g., deliberate

indifference) must or should be for the Department's administrative enforcement.").

Similarly, Plaintiff is incorrect that the Rule exceeds the Department's statutory authority in specifying that a hostile environment may be created by conduct that "limits" a person's ability to participate in an education program or activity. Pl.'s Br. 21, *see* 89 Fed. Reg. at 33,884. As the Department explained, the definition's reference to conduct that "limits or denies" participation is compelled by the text of Title IX. "If Title IX only covered exclusion from participation or denial of access, there would have been no reason for Congress to add 'be denied the benefits of'" because "be excluded from" would have supplied the necessary standard. *Id.* at 33,511. The "limits or denies" standard in the Final Rule gives effect to every word in the statute without rendering any words redundant or superfluous. *See June v. Union Carbide Corp.*, 577 F.3d 1234, 1250 (10th Cir. 2009) (holding that "one should avoid construing a statute so as to render statutory language superfluous" (quoting *McCloy v. USDA*, 351 F.3d 447, 451 (10th Cir. 2003))).

Finally, Plaintiff incorrectly contends that the harassment standard in the Rule would apply beyond the scope of a recipient's program "or even outside of the United States." Pl.'s Br. 22. The Rule states that conduct occurring outside a recipient's education program or activity or outside the United States is implicated by Title IX only insofar as it "contributes to a hostile environment in the United States" and in the recipient's program or activity. 89 Fed. Reg. at 33,576 (citing § 106.11).

### 2.     The Definition Does Not Violate the First Amendment.

Plaintiff is also incorrect that the Final Rule's definition of hostile environment sex-based harassment conflicts with the First Amendment and that only the *Davis* standard

respects principles of free speech, Pl.'s Br. 21–22. As this is a facial challenge, Plaintiff must show that "a substantial number of [the Rule's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024) (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)). It cannot.

First, *Davis* expressed no concerns that its holding would interfere with First Amendment rights, discussing the issue only to correct a misunderstanding by the dissent. *See Davis*, 526 U.S. at 652; *contra* Pl.'s Br. 22. Indeed, harassment standards similar to that in the Final Rule have long existed in many contexts (e.g., Title IX and Title VII). Courts have applied those standards for decades without raising significant First Amendment issues. *See* 89 Fed. Reg. at 33,494–95; *Harris*, 510 U.S. at 17 (defining hostile work environment standard); *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 352 (8th Cir. 2020) (dismissing a vagueness challenge to a school policy with the same standard). Just as schools and the Department have addressed discriminatory harassment on other bases consistent with the First Amendment, so can schools and the Department likewise address harassment based on gender identity.

Furthermore, the regulations state—as they did in the 2020 Amendments—that "nothing in the Title IX regulations requires a recipient to restrict any rights that would otherwise be protected from government action by the First Amendment." 89 Fed. Reg. at 33,503; *see also* 34 C.F.R. § 106.6(d) (unchanged by the Rule). To the extent that an application of the harassment standard raises First Amendment concerns, "a recipient must formulate, interpret, and apply its regulations in a manner that respects the legal rights of

students and employees when taking action to end sex-based harassment that creates a hostile environment." 89 Fed. Reg. at 33,505.

Plaintiff cites no case in which a court has held unconstitutional a definition of harassment similar to the Rule's hostile environment sex-based harassment definition. Plaintiff mistakenly relies on *Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022), Pl.'s Br. 22, which held that a different policy adopted by a public university likely violated the First Amendment. The *Speech First* policy prohibited "a wide range of 'verbal, physical, electronic, and other' expression concerning any of (depending on how you count) some 25 or so characteristics," and "reache[d] not only a student's own speech, but also her conduct 'encouraging,' 'condoning,' or 'failing to intervene' to stop another student's speech." 32 F.4th at 1125. In contrast to the Final Rule, which "only prohibit[s] conduct that meets all the elements" set forth in the definition and is evaluated based on "the totality of the circumstances . . . to ensure that no element or relevant factual consideration is ignored," 89 Fed. Reg. at 33,506, the *Speech First* "policy [was] staggeringly broad," 32 F.4th at 1125, and not "tailored to harms that have long been covered by hostile environment laws," 89 Fed. Reg. at 33,505–06 (citing *Speech First*, 32 F.4th 1110).

### D.   Plaintiff's Arbitrary and Capricious Claim Is Unlikely to Succeed.

The Final Rule is not arbitrary and capricious. *Contra* Pl.'s Br. 23–27. Under such review, agency action need only be "the product of reasoned decisionmaking," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 52 (1983); "[a] court is not to ask whether a regulatory decision is the best one possible or

even whether it is better than the alternatives," *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016).

*First*, and contrary to Plaintiff's assertions, Pl.'s Br. 23, the Final Rule explains the application of *Bostock*'s reasoning in detail. *See, e.g.*, 89 Fed. Reg. at 33,801–11.

*Second*, with respect § 106.31(a)(2), Plaintiff argues the Final Rule is internally inconsistent by recognizing some sex-separate spaces while proscribing discrimination on the basis of sex. *See* Pl.'s Br. 25–26. But, as explained above, § 106.31(a)(2) merely provides, consistent with Supreme Court precedent, that save for limited instances allowed by statute, Title IX prohibits "distinctions or differences in treatment [on the basis of sex] that injure protected individuals." 89 Fed. Reg. at 33,814 (quoting *Bostock*, 590 U.S. at 681). It is not inconsistent for the Final Rule to distinguish sex separation expressly permitted by Congress, listed in § 106.31(a)(2), from sex separation permitted by regulation in other contexts. As the Rule explains, this distinction follows directly from the statute itself, 89 Fed. Reg. at 33,814, 33,819, which "clearly effectuates [a] basic congressional decision." *Aznavorian*, 439 U.S. at 178.

*Third*, Plaintiff is incorrect that the Department "failed to consider" safety and privacy concerns in promulgating the Rule. *See* Pl.'s Br. 26–27. The Department thoroughly considered these concerns, explaining that it "strongly agrees that recipients have a legitimate interest in protecting all students' safety and privacy." 89 Fed. Reg. at 33,820 (explaining that, under § 106.31(a)(2), "a recipient can make and enforce rules that protect all students' safety and privacy without also excluding transgender students from accessing sex-separate facilities and activities consistent with their gender identity"). At

the same time, the Department found no "evidence that transgender students pose a safety risk to cisgender students, or that the mere presence of a transgender person in a single-sex space compromises anyone's legitimate privacy interest." *Id.* (citing cases that rejected "unsubstantiated and generalized concerns that transgender persons' access to sex-separate spaces infringes on other students' privacy or safety"). Nor did the Department "ignore[] states' practical concerns about authenticating gender identity," Pl.'s Br. 26. Recipients may "rely on a student's consistent assertion to determine their gender identity, or on written confirmation of the student's gender identity by the student or student's parent, counselor, coach, or teacher." 89 Fed. Reg. 33,819. Recipients may also request documentation, such as identity documentation, an amended birth certificate, or evidence of medical treatment, except where "access to such documentation is prohibited by law in that jurisdiction." *Id*. And the Rule does not preclude recipients from addressing misconduct stemming from insincere assertions of gender identity.

*Fourth*, Plaintiff expresses concern about the Final Rule's impact on athletics and argues the Department overlooked comments raising such concerns, Pl.'s Br. 26–27. But the Rule *does not* address eligibility standards for sex-separate athletic teams, which is addressed in a separate rulemaking. *See supra* Background; *see, e.g.*, 89 Fed. Reg. at 33,817 ("[u]ntil that rule is finalized and issued, the current regulations on athletics continue to apply"). The Department's decision to address athletics through a separate rulemaking is consistent with the fact that Congress recognized by statute that athletics is a special context. *Id.*; see Education Amendments of 1974, § 844. And the Department's athletics regulations have always tracked Congress's determination that the unique

circumstances of athletics merit a different approach, "governed by an overarching nondiscrimination mandate and obligation to provide equal athletic opportunities for students regardless of sex." 89 Fed. Reg. at 33,816 (citing 34 C.F.R. § 106.41(a), (c)).

*Finally*, Plaintiff argues that the Department "failed to adequately 'consider and respond to significant comments.'" Pl.'s Br. 26 (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015)).[1] But Plaintiff does not identify any comments, instead only vaguely referencing "constitutional defects and compliance challenges." *Id*. In any event, Plaintiff's argument that the Final Rule failed to adequately consider, for example, First Amendment concerns raised by commentors is wrong. *See supra* Part I.C.2; *see also* 89 Fed. Reg. at 33,492–97, 33,500–11, 33,514–16, 33,542, 33,559, 33,570-71, 33,616, 33,810, 33,828, 33,838. Similarly, the Department considered the costs of compliance, *see, e.g.*, *id.* at 33,876, and addressed comments about athletics. *See id.* at 33,816.

### E.   Plaintiff's Constitutional Claims Are Unlikely to Succeed

### 1.   The Final Rule Does Not Violate the Spending Clause

Plaintiff is incorrect that the Final Rule violates the Spending Clause, *See* Pl.'s Br. 12–14. Congress has broad power to achieve its policy aims by conditioning funding, so long as those conditions (1) are "unambiguous[]," (2) relate "to the federal interest" in the project, and (3) are consistent with "other constitutional provisions." *See South Dakota v. Dole*, 483 U.S. 203, 207–08, 211 (1987). To be unambiguous, Congress need only "make

---

[1] Plaintiff's claim that the Department permitted only 32 days to comment on the proposed rule is wrong. Pl.'s Mem. 23 (citing 88 Fed. Reg. 22,860). In fact, the comment period for the Final Rule was 60 days; and when the Department received comments about this time period, it responded to those, too. 89 Fed. Reg. at 33,840.

the existence of the condition itself . . . explicitly obvious"; it need not list all ways in which a recipient could fail to comply. *Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004). Indeed, "so long as a spending condition has a clear and actionable prohibition of discrimination, it does not matter that the manner of that discrimination can vary widely." *Id.* at 1306.

The focus of a Spending Clause inquiry is typically on a *statute*, not an implementing regulation, because the Spending Clause limits *Congress's* authority to condition federal funds. Title IX has long been held to be consistent with the Spending Clause. *Davis*, 526 U.S. at 640. Here, however, Plaintiff argues that if § 106.10 of the Rule effectuates Title IX, then either the Rule or Title IX is invalid under the Spending Clause because "Congress did not unambiguously intend for discrimination prohibited under Title IX to extend to discrimination on the basis of gender identity." Pl.'s Br. 13.

This argument fails because, as explained above, § 106.10 merely sets forth the meaning of Title IX's unambiguous statutory text. *See* Part I.A. Because it is "impossible" to discriminate against a person for being transgender "without discriminating against that individual based on sex," *Bostock*, 590 U.S. at 660, Title IX's prohibition on sex-based discrimination necessarily includes discrimination based on gender identity. Plaintiff in essence argues that this obligation not to discriminate on the basis of gender identity is not one it expected, Pl.'s Br. 14, but Plaintiff was on notice that it was barred from discriminating based on sex, and "the fact that a statute has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command." *Bostock*, 590 U.S. at 674 (cleaned

up); *see also id.* at 688 (Alito, J., dissenting) ("According to the Court, the text is unambiguous."). Indeed, in 2005, the Supreme Court rejected the argument that Title IX did not cover retaliation because it was not specifically mentioned in the statute, concluding that specific forms of discrimination not mentioned in the statute—such as retaliation— were nonetheless discrimination. *Jackson*, 544 U.S. at 175; *see also id.* ("Because Congress did not list *any* specific discriminatory practices when it wrote Title IX, its failure to mention one such practice does not tell us anything about whether it intended that practice to be covered.").

### 2.    The Final Rule Does Not Violate the Tenth Amendment

Plaintiff is incorrect that the Final Rule violates the Tenth Amendment by intruding on state sovereignty, Pl.'s Br. 14–15. "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." *New York v. United States*, 505 U.S. 144, 156 (1992). As set forth above, Title IX has long been held to be consistent with the Spending Clause; no portion of the Rule exceeds the scope of the Department's statutory authority; and Plaintiff has not shown that the Rule depends on an interpretation of Title IX that would violate the Spending Clause or any other constitutional provision.

### 3.    The Final Rule Does Not Implicate the Major Questions Doctrine

The Rule's specification that Title IX's prohibition on sex discrimination encompasses discrimination on the basis of gender identity does not implicate the major questions doctrine. Pl.'s Br. 20. That doctrine is reserved for "extraordinary" cases, "in which the history and breadth of the authority that the agency has asserted, and the

economic and political significance of that assertion, provide a reason to hesitate before concluding that Congress meant to confer such authority." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (cleaned up). The Department does not contend that Congress gave it the authority to decide as a matter of policy whether Title IX prohibits discrimination based on gender identity. Instead, the relevant portions of the rule reflect "policy decisions" made by "Congress . . . itself" in the unambiguous text of the statute. *Id.* at 723 (citation omitted). Here, as in *Bostock*, the unambiguous text of the statute controls, and thus there is no basis for invoking the major questions doctrine.

## II. Plaintiff Has Not Established Irreparable Harm.

Plaintiff also fails to establish that "irreparable injury is *likely* in the absence of an injunction," *NRDC*, 555 U.S. at 22. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). As such, "[m]erely serious or substantial harm" is not sufficient to show that the harm is irreparable. *Id.* (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).

*First*, Plaintiff claim unrecoverable compliance costs. *See* Pl.'s Br. 29. But these vague and speculative assertions state the obvious: a new regulation will likely require regulated parties to undertake some activities to assure compliance. They do not justify extraordinary relief in the form of a preliminary injunction. *See Schrier*, 427 F.3d at 1267 (upholding the denial of a preliminary injunction because the plaintiff didn't present evidence of certain and great injury); *see also Freedom Holdings, Inc. v. Spitzer*, 408 F.3d

112, 115 (2d Cir. 2005) (holding that "ordinary compliance costs are typically insufficient to constitute irreparable harm"); *Am. Hosp. Ass'n v. Harris,* 625 F.2d 1328, 1331 (7th Cir.1980) (same); *A.O. Smith Corp. v. FTC,* 530 F.2d 515, 527–28 (3d Cir.1976) (same).

*Second*, Plaintiff argues that the Rule imposes irreparable harms by preempting State law, Pl.'s Br. 28. However, "it is black-letter law that the federal government does not 'invade[ ]' areas of state sovereignty 'simply because it exercises its authority' in a way that preempts conflicting state laws." *Florida v. HHS*, 19 F.4th 1271, 1291 (11th Cir. 2021) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 291 (1981)). "Indeed, to conclude otherwise would mean that a state would suffer irreparable injury from all federal laws with preemptive effect." *Id.* at 1292. Regardless of whether the Rule preempts any state's laws, if the Department is prevented from administering the Rule, the Department, not Plaintiff, faces significant irreparable harm. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (reasoning that if the Government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977))).

In any event, Plaintiff's claim that the Rule conflicts with Oklahoma's law regarding sex separate sports teams, Pl.'s Br. 28, fails because the Rule expressly disclaims any effect on sex separation for athletics. 89 Fed. Reg. at 33,834.[2] Plaintiff's argument that the Rule's

---

[2] The declarations that Plaintiff filed after its Motion, ECF No. 27, echo Plaintiff's misplaced concern about athletics. Because the Final Rule does not address athletics, those concerns are not traceable to the Rule nor are they redressable through this lawsuit. They therefore do not support any irreparable harm caused by the Rule.

"prohibition of harassment based on gender identity conflicts with Oklahoma's protections of student and faculty speech," Pl.'s Br. 28, is also wrong and does not meet the high standard for a preliminary injunction, 89 Fed. Reg. at 33,503, particularly in the context of a facial challenge, *see RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

*Third,* Plaintiff suggests it is harmed because "educational institutions face the threat of private suits for violations of Title IX." Pl.'s Br. 28 (citing *Davis*, 526 U.S. at 642-43, 650). But whether educational institutions face the threat of private suits for violations of Title IX under *Davis* is irrelevant here: the Final Rule pertains only to the Department's enforcement authority. It does not change the *Davis* standard under which private actions may be brought.

*Fourth,* Plaintiff contends that enforcement of the Rule "threatens to collectively strip Oklahoma" of federal funding from the Department. *Id.* at 29. But such injury is unrealistic and insufficiently imminent to warrant a preliminary injunction. Even if enforcement action occurred, recipients could raise challenges that would precede any termination of funds. *See* 20 U.S.C. § 1682. And any adverse administrative determination would be subject to judicial review. *Id.* § 1683.

*Fifth*, Plaintiff waited until June 28, 2024, to file its Motion for a Preliminary Injunction—two months after the Final Rule was published and just one month before the effective date—without explanation. Such delay is inconsistent with the imminent, irreparable harm necessary to justify a preliminary injunction. *See RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) (holding that "delay in seeking preliminary relief cuts against finding irreparable injury" (quoting *Kan. Health Care Ass'n v. Kan.*

*Dep't of Social & Rehabilitation Servs.*, 31 F.3d 1536, 1543–44 (10th Cir. 1994))).

## III.    The Equities and Public Interest Weigh Against Preliminary Relief.

The balance of equities and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. These combined factors counsel against the requested preliminary relief.

The Final Rule implements the Department's authority to enforce Title IX's objectives. *See* 20 U.S.C. § 1682. "[T]here is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop." *Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008).

Moreover, Title IX mandates that "[n]o person" be subjected to sex discrimination in any education program or activity. 20 U.S.C. § 1681(a). Granting preliminary relief would significantly harm the federal government's interests in preventing such discrimination. Sex discrimination in educational environments has devastating consequences, including the effects of harassment based on sexual orientation and gender identity. *See, e.g.*, 89 Fed. Reg. at 33,478–80 (summarizing commenters' experiences). The Rule, therefore, effectuates Title IX's important goals of "avoid[ing] the use of federal resources to support discriminatory practices [and] provid[ing] individual citizens effective protection against those practices." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 704 (1979). Needless to say, preventing sex discrimination is in the public interest. *Roberts*, 468 U.S. at 623–24.

Conversely, Plaintiff has failed to show it faces significant imminent and irreparable harm. *See* Part II. At most, Plaintiff speculates about compliance costs. But compelling

nonmonetary government interests measure up against even serious economic harm. *See, e.g.*, *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 470 (5th Cir. 2021) (allowing the state government's restrictions with respect to the operations of bars in response to COVID-19 despite financial harms to the bars); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020) (weighing the plaintiffs' "very real risk of losing their businesses" against "the Governor's interest in combatting COVID-19").

## IV.   Any Relief Afforded by the Court Should Be Limited in Accordance with the Administrative Procedure Act and Equitable Principles.

For the foregoing reasons, Defendants dispute that any relief is warranted. But if the Court disagrees, any relief should be appropriately limited. The Court should not issue preliminary relief that extends beyond Plaintiff or beyond portions of the Rule as to which Plaintiff establishes a likelihood of success and irreparable injury.

In any event, relief should be limited by traditional equitable principles, including that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). "At a minimum, a district court should think twice—and perhaps twice again—before granting universal anti-enforcement injunctions against the federal government." *Arizona v. Biden*, 40 F.4th 375, 395–96 (6th Cir. 2022) (Sutton, C.J., concurring).

Finally, the Final Rule is severable. *See* 89 Fed. Reg. at 33,848 ("[R]emov[ing] any 'doubt that [it] would have adopted the remaining provisions of the Final Rule' without any of the other provisions, should any of them be deemed unlawful." (citation omitted)).

Plaintiff has challenged only certain portions of the Rule and even then only certain applications thereof; the remainder should be permitted to go into effect, as intended, on August 1, 2024. As the Supreme Court explained, courts should "enjoin only the unconstitutional applications of a statute while leaving other applications in force, . . . or . . . sever its problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328–29 (2006) (citation omitted).

Applied here, those principles would permit at most a limited injunction against § 106.31(a)(2) and § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity. The Court should not enjoin § 106.10, which when properly understood could not cause the harm that Plaintiff alleges. Nor is there any basis for enjoining unchallenged provisions of the Rule.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated: July 16, 2024                              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

EMILY B. NESTLER
Assistant Branch Director

*Benjamin Takemoto*

ELIZABETH TULIS
REBECCA KOPPLIN
BENJAMIN TAKEMOTO
HANNAH SOLOMON-STRAUSS
PARDIS GHEIBI
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: 202-532-4252
Email: benjamin.takemoto@usdoj.gov

*Counsel for Defendants*